Good morning, Your Honors. My name is Aaron Wagner. I represent Mr. Stout. I would like to reserve two minutes for about a minute. Thank you. Counsel, please keep track of your own time. You can see the clock in. Can I just tell you I'm having, even I am having a little trouble hearing you, and I'm worried for Judge O'Scanlan because he's farther away, so. I will do my best. Thank you very much. That would be helpful. FreeScore paid Ben Stein to appear on national television and tell anyone that would listen that they should visit FreeScore.com so that they can fix errors on their credit report. Through FreeScore.com, FreeScore advises potential customers that the best way to deal with or improve a cycle score and to repair a damaged credit score may be to utilize credit monitoring services, which happen to be just what FreeScore sells. FreeScore also represents that it can help potential customers quickly address incorrect information, and dragging down their credit scores, and help them to ensure that their credit report is clean. It additionally, on its website, informs potential customers that its advice and assistance can help to have an immediate effect on their credit score. FreeScore is in the business of credit repair, but more importantly, it is a credit repair organization, as defined by relevant federal law. So what is a credit repair organization? Well, it is an entity that represents, simply represents, that it can or will sell, provide, or perform any service in exchange for consideration for the express or implied purpose of providing advice or assistance with respect to improving a credit history, credit score, or credit rating. Whether an entity actually performs any service is irrelevant to that determination. Counsel, the district court thought that that wasn't happening here. That essentially this wasn't a credit reporting organization because they're selling, for a price, a credit score. So my first question is, there's an indication in the complaint about an educational score being provided. Could you explain to me, if I signed up for FreeScore, what credit score would I receive? That's a very good point, Robin. FreeScore doesn't provide FICO scores. It does not? It does not. Okay. FICO scores are what lenders use. Yes. FICO scores are what banks use to determine what rate you're going to get. FreeScore provides what industry experts actually call FICO scores. They are scores based upon FreeScore's own proprietary formula or someone's own proprietary formula, and they differ significantly from FICO scores. So with respect to the FTC's comment, and I think that may be where your honor is going, about the genuine value to companies that provide credit reporting services, credit monitoring services, what benefit is there to allowing a company like FreeScore to provide scores that aren't FICO scores and to mislead unsophisticated consumers into believing that their credit score is what it isn't? Forgive me for interrupting. Does the complaint explain, did I miss it, does it explain what an educational score is? No. An educational score, well, I don't think so. An educational score is simply how FreeScore characterizes its scores. What FreeScore does is provide credit monitoring services, in addition to hindsight-looking analysis as to how to repair a historical record. Okay, so forgive me, but just one more question. Sure. The credit monitoring part of this comes through loudly and clearly. Yes. But that sounds like that's credit monitoring of what we would think of as the big three credit scores, as opposed to this educational score. Am I right? Yes, and effectively, the educational score is a, quote-unquote, educational score because it's not a FICO score. It's not a credit score that lenders use. It is a score that FreeScore suggests mimics what could potentially be a consumer's actual FICO score. Okay, but if I signed up, again, and then I'm going to give you a chance here, sorry, but if I signed up, would I be getting monitoring of my FICO score? No. Just the educational score? You're getting monitoring of the credit scores that FreeScore utilizes, which is, so no, you wouldn't be getting monitoring. No, but isn't it the credit score that the agencies report, the big three, based on the FICO score? It doesn't tell you what the FICO score is, but it tells you what the big three have done, which we all know is based upon a FICO score, right? The FICO score is the FICO score. It is the Fair Isaac Corporation, which has its own formula, and that is what a FICO score is. The scores that FreeScore provides are not those scores. But here's the question that's a little bit different. The question I think we're both trying to ask is the monitoring that's going on is the monitoring of what score? The FICO score? I believe it's the monitoring of the three big credit rating agency scores. That's what I believe it to be. I could be mistaken, and I apologize if I am, but I think that's what it is. That's all there is. They're monitoring what one could get by directly consulting that agency to get that number. That's all they're doing. They're not adding value in any way, are they? Yes, they are. They actually are. What value are they adding? Well, if we take a look at what FreeScore says it does, quote, we keep an eye on your credit reports at all three bureaus so you don't have to. They do something that consumers don't do. Unlimited access to automatic credit monitoring alerts. They do something that consumers can't do. FreeScore provides you with the tools you need to access and monitor your credit. Well, what is a tool? Merriam-Webster defines it as a device used to aid in attacks. But I don't quite understand that argument. It seems to me all they're doing is providing you with the same information that you would get if you had access directly to these credit reporting organizations. They're not just doing that for the same reason that I just suggested. They are doing things above and beyond. They're providing alerts. They're providing monitoring. They're providing services that people get by paying $29.95 a month to FreeScore, which they don't get by getting a FICO score or going to the government's website, annualcreditreport.com. They provide services above and beyond a simple score. Because if, in fact, they were just providing the FreeScore that you could get at the government website, why would people pay $29.95 a month, month after month after month to do it? Well, that raises the question. Isn't your stronger argument not based upon what they actually do but what they say they can do? Yes, that's exactly the case, what they say they can do. And it's not just what they say they can do. It's what they represent they can do in an explicit or implicit manner. Well, they can provide access to those reports, right, the big three reports. They do monitor those, don't they? At least that's what the complaint alleges. Yes, yes. Okay, so what is it they allege they do that they can't do? That who alleges they can't do? FreeScore. FreeScore. And going back to Judge Kogan's question, what is it that they represent that they can do that you think they can't or don't do? Well, one, it's not free, but it's not the fact that they represent they can or can't do anything. So I just take a step back. We're not talking about what the actual violation is. We're talking about whether or not FreeScore is a credit repair organization because if, in fact, they are, they didn't provide the disclosures necessary or the contract necessary and, therefore, if FreeScore is a credit repair organization, that's it. I think we all understand that that's the only basis for the decision below, that it wasn't a credit repair and it didn't go any farther. Right. So, again, going back to Judge Kogan's question, what is it about the representations they make about what they can do that makes them a credit reporting organization? Well, take the forward-looking and backward-looking analysis. Now, let's start with the forward-looking analysis. Seven of nine federal courts, to consider the question, are credit monitoring services, credit repair organizations, have said yes, and that includes the First Circuit Court of Appeals, which is the only circuit court of appeals to address the issue. Now, Zimmerman did a lot more than FreeScore did, didn't they? Zimmerman what? The organization, Zimmerman, did a lot more than FreeScore does here. Yes, it does, but that does not change the legal holding. That case could be about pink elephants and green martians, and the holding is future-looking credit monitoring services are credit repair organizations. And that's actually, Your Honor, you can find that at page 28 of the blue brief, the actual holding. It is quite clear. It is a legal holding. Future-looking credit monitoring organizations are credit repair organizations. Because think about it. What is the closest statement of the ones that FreeScore makes that comes closest to the ones that Judge Kogan is no doubt referring to? What's the closest thing FreeScore does to saying we will fix your credit or repair your credit? Well, FreeScore says we will help to, Ben Stein appeared on National Television, said this is where you come to fix errors on your credit. FreeScore took a look at a FICO score and said, quote, the best way to, quote, deal with or improve a FICO score and to, quote, repair a damaged credit score is to utilize a credit monitoring service. Doesn't the case come down to whether they have to do it or you, the consumer, has to do it? Absolutely not. But even if that were the case, FreeScore doesn't. FreeScore absolutely doesn't. FreeScore says we will provide you, we'll keep an eye on your three credit reports so you don't have to. We provide you with the tools, which is assistance, so it doesn't have to because what is the definition of a credit repair organization act? Anyone that represents a can or will provide or perform a service, represents a can or will for the purpose of providing advice or assistance with respect to improving your credit. What is the entirety of this FreeScore website and Ben Stein commercial about? Ben Stein says it's because you need to go from down here to up there, get out of a financial hole. There isn't any other reason that FreeScore does what it does except to convince people that it should pay $29.95 a month to improve their credit score. That is the net impression of the entire advertising campaign. At a common sense level, there isn't anything else it could be. But getting back to the Zimmerman. You've used up your time, counsel. Sure. I got you mid-sentence. Go ahead and please wrap up your final thought. The distinction between backward-looking and backward-looking credit repair is unsupportable. The Zimmerman court noted it because at the end of the day, what is credit repair? It's simply looking for a way to better a past credit history. Now, whether you do that by fixing errors, which is what FreeScore offers it can do, or whether you do that by future-looking credit orientations, the result is the same. You simply want to restore a past credit score and make a future credit rating better. There is no distinction. Looking backward or looking forward, you have the same idea. FreeScore does both. FreeScore is a credit repair organization. Thank you. Thank you, Your Honor. In my brief moments, I want to address the questions the court has already asked. First, Stout concedes this complaint fails unless FreeScore is a credit repair organization. Second, Stout concedes the only thing FreeScore actually says it will do is provide access to the existing credit reports, the scores, which I'll get to in a minute, and updates on those. So it's only providing access to current status of one's credit. That information. Which I can only get free once a year from each of those. That's right. And that's why there's value added in that sense. You can either get it once free from the government, or you can have unlimited access, the convenience and peace of mind of that, and also have someone tell you if there's a change. And what is the purpose in adding that value? The purpose of adding that is, again, so someone is aware in between the 12 months that there's something that's impacting their credit. Is that not advice in connection with improving their credit? It solely tells them that here is the event that occurred. It does nothing to, and they admit, there's nothing in the commercial or on the web page that says, we're going to analyze your credit reporter score. We're going to diagnose what your current status is. We're going to look and tell you if there's any inaccuracies. If you find any that we're going to help you change them, or anything else that would actually be an agency, an act of somebody trying to help them do something. Well, then what's the point of the educational score? That, Your Honor, and it was correctly described a moment ago. Each of the three majors has one of these scores, and that is what is compiled on an instantaneous and continuous basis of access to the customer by free score. And by the way, this talk about it being fraudulent, it's precisely the same scores that the FTC gives them, gives everyone access to once a year. So the FTC is engaged in the same fraud according to a bill. Well, I think we understand that part, but if you could go back to the educational score that the score provides. It is, the purpose, I think the court got it exactly right earlier on. Fair Isaac is not something that the three majors have, the proprietary Fair Isaac is something they have access to. So what they do is come up with what they think is, in effect, a reasonable facsimile of that, which will inform somebody, namely the customer, where they stand in the situation of credit status. But doesn't it imply if it's an educational score, if somebody signs up for free score, that it's an educational score that I'm going to be taught how to do something? I don't think so, Your Honor. It's basically telling you here is the score that the agencies, the three majors, have for you. It doesn't mean anything beyond that very, the only agency being provided here is to provide access to that information. And by the way, what they call the disclaimer, the significance of it isn't that it somehow immunizes free score. Point blank, they tell the customer what they do and what they don't do. Access to credit information and not repair. It looks like the marketing department did its job and then the legal department did its job and put in the disclaimer. But the fact of the matter is when you give them this educational score, isn't it for the purpose of assisting them in improving their credit? Isn't your population that you're marketing to, in fact, people who have credit problems? First, if you look at the actual quotations in the Judicially Noticeable webpage and on the advertisement, it's really directed to everybody. They're saying if you know your credit score, you can know if you're up there or down here. In theory, but in fact, who are you marketing to? It is people who want to know, given how important having your score and knowing what your score is, which is what both we tell people and what the FTC tells people on their own website. It's to give them access so they can monitor it. And wealthy people, as well as people who may be in trouble, sometimes wealthy people are in trouble, have just as much reason to know if there's identity theft, if there are errors on their report, because their credit scores matter, too. And I would submit that that's the amount it costs. You're going to get people of well means as well as people who aren't. I think it's important. Not only do they concede what it is we say we'll do, they also concede that we don't say it again, that we analyze anybody's report or score, that we diagnose the status, that we spot any inaccuracies, or we counsel them on how to fix them if they spot any inaccuracies, or assist them if they try. We do none of that. And that is hardly, if you look at the finding, the congressional finding that begins this statute and is part of the statute, what they were looking at are offers to repair credit, not to provide information. And counsel, as in the briefs, tries to conflate credit monitoring services with credit counseling services. It comes awfully close, though, counsel. It seems to me there's a representation that you'd receive instant e-mail alerts, notify you when critical changes appear on your credit report so you can make corrections fast. And my concern is that there's that coupled with a repeated reference to giving you tools, giving a consumer tools to make corrections on a report. What is your response to that? The tools to know and monitor your credit. There's no tool. And, again, that's what they call the disclaimer. It talks about making changes, making corrections. You making changes. There's no indication whatsoever, and we don't know what allegations we do, that we are going to give any advice as to whether there is a problem, whether there is an inaccuracy. It's left to you, quote, you to do it. So is your position that your client only provides tools to monitor? We only – that's exactly right. And not counseling. There's nothing in there that says we're going to counsel anybody. So the cases about counseling, such as Zimmerman, have nothing to do with this situation. Every case where a court has held that a defendant was or could be a CRO, every case involves someone going beyond mere monitoring or merely providing existing credit status and instead counseling. Counsel, would you spell out your response on the Zimmerman case that was argued by your opposing counsel? Right. They say in the last page of the reply that that's their closest case, and then they said it's a credit monitoring case, and it's not. That's a credit counseling defendant who was doing – who said it would improve your credit by trying to re-age your credit accounts, by trying to renegotiate your credit accounts, et cetera. That's so far removed from a pure credit monitoring situation. What the courts say is credit monitoring in and of itself isn't a CRO, only if they go beyond that and do these things that credit counselors and actual repair organizations do. And the FTC agrees. When it reported its position to Congress, it said it saw little reason to subject credit monitoring and credit information services to the CROA. Now, it also made clear if they do these other things, that takes them out of that realm and puts it in play. And in their reply brief, they claim that the FTC walked back from that position because it eventually told Freescore and the others that they need to disclose to the customer. They didn't have any problem with the service. They just said you need to disclose to them this once a year free FTC option that's in there. But important, Your Honor, that was under the Fair Credit Reporting Act. There was no effort by the FTC to say that was – that they were asserting authority under mere credit monitoring organizations under the Credit Repair Organization Act. I have one more question I need to ask. Yes, Your Honor. Isn't your biggest problem that the statute is in fact so broadly worded? It says it applies to CROs, anybody who gives advice or assistance for the implied purpose of improving any consumer's credit record or history. That is so broad that it almost – I don't want to say it applies to someone who just gives monitoring services, but the way you advertise your service suggests – it implicitly suggests, it seems to me, that you're trying to improve that service. Isn't that your problem? You're advertising as it fits into the statute? I don't think so, Your Honor, in two respects. One, you construed the language in the context of the statute as a whole. The statute as a whole here includes not legislative history, but congressional findings in the statute itself that tell you what's motivating them and what they're after, which are offers to repair credit. Second, Your Honor, we tell people – maybe, you know, we use a squirrel in the commercial and we use Ben Stein, but we tell people the same substance that the FTC tells people on their own website, that credit reports and scores are important to everybody. Everyone should know them, and here's why. Counsel, people who have good credit scores don't need to hear that every single month, right, and don't need to pay $360 a year to hear that every single month. Your materials clearly say that there will be monthly monitoring and that a consumer would have the opportunity to make corrections to the credit report. That's not somebody – that's not going to be appealing to somebody who has a good credit score. Oh, I think even more so that they would want to know if there's a mistake on there that is as – and to correct counsel, and it's on page 26 of the opening brief, we don't tell people, buy our service because, as they acclaim, we say, because that will immediately impact your credit score. What it actually says, and you can look at the real language, we say these credit monitoring services like ours can tell you if there's a change, and those changes can have an immediate impact on your credit scores. Opposing counsel said that Ben Sline said this is how to fix your credit. Did he use that verb? What he said is one can't fix if you don't know what your score is if there's an error. But, again, we're not telling people there's any errors. But, again, wealthy or not wealthy, you're going to be very interested if there's mistakes on there, just as you are in your credit card statement. And if it were merely, Your Honor, in giving information about your current status, like a thermometer and telling you, well, the reading on the thermometer is this is your degrees, that's not medical advice. That's just telling you what the current situation is or your degrees went up some. But if that were sufficient, then every bank statement and every credit card statement would fall under this act because every one of those can be used by someone to improve their credit. But it's your marketing. It's your marketing. The credit card companies and the banks, they don't market for the purpose of helping people improve their scores. There may be that collateral benefit from getting information, but that's not how the banks market their credit cards. But, Your Honor, if you look at the actual language, what we're saying, again, compared to what the FTC is saying, it's saying you need to know if you're up here or down here. If any major purchase, car, house, job application, insurance, you need to know your score because it basically acknowledges power here. You need to know whether it's good or bad. You certainly need to know whether it's accurate or not. And these are the things the FTC tells everyone in almost the same language. I take it if a bank sent out a credit card statement and they said with it, we're now offering a service which will give you a weekly report on your charges so that if there's an impact on your credit history, you will be able to fix that history. That to you would not be a CRO, right? Well, maybe just slightly more precise. If it said what we're saying here, you should look at your credit statement each month and you can have access to it all the time on our service. Because this will help you fix. Because it will help you to make sure there's no errors. And if you see an error, you may want to fix it. But we, the bank, or the credit card company, aren't going to help you look for errors. And we're not going to advise you on how to do that. And that's precisely the situation we have here. All we give them is the information. Thank you. You're a couple minutes over your time. Counselor, you used all of your time, but we went over, so we'll put two minutes on the clock for you if you'd like to respond. If what Freescore says is true, then any defendant anywhere is free to violate the CROA so long as it's clever enough to couch its representations in a less-than-absolute manner. But we know that's not true because the language of the Act says, represent in an implicit manner. Freescore is a credit repair organization. If this court is adverse to this court's will, we may enter for further proceedings. And unless you have any additional questions, that's all I have. Judge, anything further? No, thank you. Thank you, Counselor. Thank you. We'll submit this case.
judges: Cogan, O'scannlain, Christen